# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

Nº 10-CV-2720 (JFB) (ETB)

JONATHAN GIANNONE,

Plaintiff,

VERSUS

BANK OF AMERICA, N.A., & UNITED STATES SECRET SERVICE,

Defendants.

**MEMORANDUM AND ORDER**
September 22, 2011

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Jonathan Giannone (hereinafter "plaintiff" or "Giannone") brought this action against defendants Bank of America, N.A, (hereinafter "BofA") and United States Secret Service (hereinafter "USSS") (collectively "defendants") alleging that they violated the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3402, 3403(a).

The defendants have separately moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff's claims are time-barred and, in the alternative, that plaintiff failed to state a claim for which relief may be granted. For the reasons discussed herein, the Court dismisses plaintiff's complaint in its entirety as time-barred. In the alternative, the Court concludes that the BofA was permitted to release the information it allegedly disclosed to the USSS, which did not have to follow standard procedures for obtaining it. Specifically, the USSS was exempt from following normally-applicable procedures because the information it allegedly obtained was exempt under Section 3403(c) as either "identifying information" relevant to a criminal investigation or "information concerning the nature" of suspected criminal activity. Thus, even accepting the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the RFPA claims against BofA and the USSS fail as a matter of law and cannot survive a motion to dismiss.

## I. BACKGROUND

### A. The Complaint

The following facts are taken from the complaint and are not findings of fact by the Court. They are assumed to be true for the purpose of deciding this motion and are

construed in a light most favorable to the plaintiff, the non-moving party.

Central to this dispute is an exchange of information between BofA and the USSS regarding plaintiff's accounts with BofA. In April 2005, plaintiff opened an account ending in 2565 (hereinafter "business account") in the name of a Massachusetts corporation called A&W Auto Clinic which listed a Massachusetts address on the account. (Compl. ¶¶ 12-13.) Approximately a year prior, plaintiff opened a personal checking account ending in 0645 (hereinafter "personal account") with Fleet Bank, which was later acquired by BofA. (*Id*. ¶¶ 10-11.) The accounts were linked. (*Id*. ¶ 41.)

The exchange of information central to the complaint took place as part of a criminal investigation. On May 19, 2005, the USSS initiated "Operation Anglerphish" to investigate theft of personal financial and other identifying information, among other things. (*Id*. ¶ 14.) The USSS utilized a confidential informant by the name of Brett Shannon Johnson ("Johnson") to contact online someone with a screen name "Pit Boss 2600" (hereinafter "Pit Boss") in an attempt to gather information about the various schemes being investigated. (*Id*. ¶ 15.) The exchange eventually led to Johnson purchasing stolen credit card numbers from Pit Boss. (*Id*. ¶¶ 16-21.) On June 7, 2005, Johnson deposited $600 in the business account, the number for which was provided by Pit Boss. (*Id*. ¶¶ 19-20.)

Once the USSS obtained the business account number from Johnson as the one into which he deposited money for Pit Boss, the USSS contacted BofA via telephone to obtain information about it. (*Id*. ¶¶ 40-41.) This telephone exchange took place on or about June 7, 2005 (hereinafter "June 7 telephone call"). (*Id*. ¶ 41.) At that time, the USSS did not have a subpoena for any bank records related to Johnson's exchange with Pit Boss. (*Id*. ¶ 40.)

BofA was served with a subpoena on July 1, 2005 for information regarding the business and personal accounts. (*Id*. ¶ 22.) In July 2006, agents working for the USSS interviewed Hunter Moore, a former confidential informant, who identified plaintiff as using the online identity of Pit Boss. (*Id*. ¶ 26.) Pursuant to a grand jury subpoena, the USSS received the opening documentation and signature cards for the business account. (*Id*. ¶ 27.) The BofA employee who opened the business account identified plaintiff in a line-up as the individual who opened that account. (*Id*. ¶ 29.)

On August 14, 2006, Special Agent Bobby Joe Kirby ("Kirby") filed an affidavit accompanying a criminal complaint against plaintiff and a warrant for his arrest. (*Id*. ¶ 30.) On March 8, 2007, plaintiff was convicted after a jury trial of wire fraud in violation of 18 U.S.C. § 1343. (*Id*. ¶¶ 30, 38.)

B. Procedural History

Plaintiff filed his complaint on June 14, 2010. On October 7, 2010, the USSS requested that a pre-motion conference be held to address its motion to dismiss the complaint. In an Order dated October 13, 2010, the Court waived the pre-motion conference requirement and set a briefing schedule for defendant's motion. The USSS filed its motion to dismiss on November 22, 2010. Plaintiff filed his opposition on January 3, 2011. The USSS filed its reply on January 14, 2011.

On November 23, 2010, BofA filed a letter requesting that a pre-motion conference be held to address its motion to

dismiss the complaint. In an Order dated November 29, 2010, this Court waived the pre-motion conference requirement and set a briefing schedule for defendant's motion. BofA filed the motion to dismiss on December 29, 2010. Plaintiff filed his opposition on March 18, 2011. BofA filed its reply on April 22, 2011.

The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S.Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth*." Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556–57).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings ... liberally." *McCluskey v. N.Y. State Unified Court Sys.*, No. 10–CV–2144 (JFB)(ETB), 2010 U.S. Dist. LEXIS 69835, at *8 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and

3

relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

As set forth below, the Court concludes that plaintiff's claims are time-barred. In the alternative, it is apparent that BofA was permitted as a matter of law to provide the kind of information it allegedly revealed about plaintiff's personal and business accounts to the USSS. Accordingly, the claims against BofA and the USSS cannot survive a motion to dismiss.

### A. Statute of Limitations

The defendants argue that plaintiff was aware of the allegedly inappropriate communication between BofA and the USSS more than three years prior to the filing of his complaint so that plaintiff's claims are time-barred. Specifically, defendants argue that Kirby's affidavit, accompanying the criminal complaint and arrest warrant against plaintiff, and which plaintiff had in his possession since August 26, 2006, "set[] forth the sequence of events and describe[d] an initial inquiry" to the BofA "prior to the issuance of a grand jury subpoena." (USSS's Mot. at 7; *see also* BofA Mot. at 8-9.) In the alternative, defendants argue that plaintiff should have been aware of the allegedly illicit communication at the latest by March 2007, when USSS agents testified at trial about their contact with BofA. (USSS's Mot. at 7; BofA Mot. at 10-11.) Plaintiff, in turn, asserts that he learned of the exchange of information on June 12, 2007, when he received a letter from Johnson stating that it occurred prior to the USSS obtaining and serving a subpoena on BofA. (Compl. ¶ 40.) Specifically, in his letter, Johnson stated to plaintiff that Giannone was

> identified by the Bank of America [business] account [] you gave out to me. After money was deposited the USSS simply called 'B of A' and asked some questions. This was <u>ALL</u> without a warrant. There was some link there which identified you. <u>After</u> identifying you the USSS subpoena[a]ed the bank records in order to be legit.

(Decl. of Diane Leonardo Bechmann ("Beckmann Decl.") Ex. C at 1 (emphasis in original).) The Court concludes that plaintiff's claims are time-barred. Plaintiff was aware of the communication where information was allegedly inappropriately exchanged by March 2007 at the latest.

An action pursuant to the RFPA must be filed "within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416. *See also Strother*

*v. Harte*, 171 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2001). The date of discovery is not the date when plaintiff realizes he has a legal cause of action; rather, it is the date on which plaintiff becomes aware of the alleged injury. *See United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment[,]" concluding that a plaintiff who was aware of the critical facts surrounding his claim knew of the alleged injury for purposes of the statute of limitations).

Plaintiff's claims are time-barred. The alleged violation occurred on June 7, 2005—clearly more than three years prior to the filing of this lawsuit on June 10, 2010.[1] Furthermore, plaintiff was aware of the facts surrounding the allegedly inappropriate exchange of information more than three years prior to filing the complaint. Although plaintiff claims that he became aware of the telephone call between BofA and the USSS on June 12, 2007 when he received a letter from Johnson, the Court concludes that he was aware of the facts surrounding the alleged violation in March 2007, at the latest. At that time, a USSS agent testified that he learned plaintiff's name from BofA during the June 7 telephone call.[2] For

---

[1] At the time the complaint was filed, plaintiff was in prison. According to the prisoner mailbox rule, the date petitioner delivered his complaint to prison officials is the date on which his petition was deemed "filed." *See See Houston v. Lack,* 487 U.S. 266, 273-75 (1988); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). Plaintiff's complaint was filed with the Court on June 14, 2010. However, plaintiff signed the complaint on June 10, 2010. Furthermore, the Prisoner Authorization form for his court filing fee was signed on June 10, 2010. (Docket No. 2.) Viewing the facts alleged in the complaint and making all reasonable inferences in favor of plaintiff, the Court concludes that plaintiff's complaint was filed on June 10, 2010. The Court notes that neither defendant contests that the complaint should be deemed filed on June 10. The USSS did not raise the mailbox rule issue at all. BofA noted in its papers that if the Court applied the mailbox rule, the complaint would be deemed filed no later than June 12. (BofA Mot. at 8 n. 9.)

[2] The Court may consider such testimony, as well as other documents filed in the course of the criminal proceeding, as public documents or records, although the statements contained therein may only be considered to prove that such statements were made and may not be used to prove the truth of the matters asserted therein. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (testimony in other proceedings is a public record that court may take judicial notice of, but only for purposes of establishing the "existence of the opinion"); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation . . . a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."); *Sands v. McCormick*, 502 F.3d 263, 265 (3d Cir. 2007) ("[W]e conclude that portions of a transcript of a preliminary hearing may be considered in connection with the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)."). In fact, courts have routinely considered such public documents in deciding motions to dismiss on statute of limitations grounds. *See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("We have previously held that it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice as well as other matters." (emphasis in original)); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("In this case, the district court need only have relied

purposes of the statute of limitations, plaintiff was aware of the allegedly illicit exchange of information after this testimony, when considering the testimony in combination with other information that plaintiff was already made aware of during the course of the criminal prosecution. By the time of this testimony, plaintiff already knew that: (1) the business account was in the name of a Massachusetts corporation so that plaintiff's name was not on that account (Compl. ¶¶ 12-13); and (2) the Kirby affidavit that was served on plaintiff at the time of his arrest and attached to his criminal complaint (Compl. ¶ 30) indicated that the grand jury subpoena was served on BofA on July 1, 2005, approximately one month after the June 7, 2005 conversation between the USSS and BofA (*see* Beckmann Decl. Ex. B ¶ 18 (Kirby affidavit)).[3] The March 2007 testimony concerned when the USSS learned of plaintiff's identity:

---

upon the state court's record of dismissal with prejudice in the underlying suit – a public document – to rule that [plaintiff's] malicious prosecution claim was barred by the statute of limitations."); *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (considering a civil complaint in connection with a statute of limitations motion under Rule 12(b)(6) and noting that: "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice. New England's complaint against Fruit, therefore, is properly part of the record before us." (citation omitted)); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (finding another court's opinion was properly considered on motion to dismiss on statute of limitations ground).

[3] The Court can consider the Kirby affidavit for the reasons stated *supra* in footnote 2.

Q. Okay. When, for the first time, do you believe that Jonathan Giannone's name appeared?

A. Probably June 7th of '05, somewhere around that date. It was after that we put money in the [business] account.

. . .

A. The exact date? I know we put money into his [business] account on June 6th and I'm pretty sure I called Bank of America the next day, June 7th, to obtain information on that account.[4]

(Docket No. 57 at 3 (transcript of testimony); USSS's Reply at 5.) The agent clearly testified that on June 7, 2005 the USSS obtained plaintiff's name from BofA. Thus, by March of 2007, plaintiff was aware of all the facts that form the basis for his claims against defendants in the instant suit—namely, evidence supporting the argument that the USSS obtained from BofA, without a subpoena, information from plaintiff's personal account (like his name) in the course of their investigation of the business account. Plaintiff's claims are, therefore, time-barred because his complaint was filed on June 10, 2010, more than three years after plaintiff discovered the facts in March of 2007 that allegedly constitute his injury. *See, e.g., Strother*, 171 F. Supp. 2d at 208-09 (concluding on a motion to dismiss that RFPA claim was time-barred where affidavit submitted in the course of the state court litigation indicated that plaintiff's financial information was disclosed).

---

6

### B. Permissible Disclosure of Information

In any event, even if plaintiff's claims were not barred by the statute of limitations, plaintiff failed to state a claim for which relief may be granted. Viewing the facts alleged in the complaint in the light most favorable to plaintiff, BofA was permitted to release the personal information alleged by plaintiff under the exemptions to the RFPA's procedural requirements.

#### 1. Legal Standard

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422, "which imposes limits on the Government's access to records of financial institutions concerning individual customers, was intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity." *Irani v. United States*, 448 F.3d 507, 509-10 (2d Cir. 2006) (quotation marks omitted). A customer is "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution . . . in relation to an account maintained in the person's name" 12 U.S.C. § 3401(5), where a person is "an individual or a partnership of five or fewer individuals" 12 U.S.C. § 3401(4). The statute "prohibits government access to information contained in customers' financial records, unless one of the statutory exceptions . . . applies." *Puerta v. United States*, 121 F.3d 1338, 1341 (9th Cir. 1997); *see also* 12 U.S.C. § 3402 (listing statutory exceptions and procedures for obtaining information).

One of the exceptions allowing banks to reveal customer information to law enforcement is Section 3403(c) of the RFPA, which states that

> [n]othing in this title [] shall preclude any financial institution . . . from notifying a Government authority that such institution . . . has *information which may be relevant to a possible violation of any statute* or regulation. Such information may include *only the name or other identifying information* concerning any individual, corporation, or account involved in and the *nature of any suspected illegal activity*. Such information may be disclosed notwithstanding any constitution, law, or regulation . . . to the contrary.

12 U.S.C. § 3403(c) (emphasis added). The government may access identifying information or information relating to suspected illegal activity without obtaining customer authorization, an "an administrative subpoena or summons," a search warrant, judicial subpoena, or a formal written request as would normally be required under 12 U.S.C. § 3402. *See also* 12 U.S.C. §§ 3403(b), 3405-08 (elaborating on the other procedures that normally have to be followed by the government to obtain information). The RFPA provides for a civil cause of action for violations of the Act by "[a]ny agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter . . . ." *See* 12 U.S.C. § 3417(a).

#### 2. Application

Plaintiff alleges in the complaint that BofA illegally released information to the USSS, including plaintiff's name, social security number, driver's license number and personal address, as well as plaintiff's account history. Though not in the complaint, plaintiff also appears to argue that the BofA inappropriately released his personal and business account numbers, as

7

well as addresses from both accounts.[5] (Pl.'s BofA Opp. at 7-8.) Viewing the allegations in the complaint in the light most favorable to plaintiff, the Court concludes that BofA was permitted as a matter of law to release plaintiff's name, social security number, driver's license number, personal account number,[6] and address listed on plaintiff's personal account[7] as identifying information. Furthermore, BofA appropriately released plaintiff's personal account history in order to help reveal the nature of the suspected illegal activity.

As an initial matter, BofA was permitted to release information about plaintiff's personal account though the USSS's investigation concerned the business account. According to the allegations in the Complaint, as well as documents incorporated by reference therein, (including the Kirby affidavit and Johnson letter), the USSS was investigating the business account because it was the account into which Johnson deposited funds in exchange for stolen credit card numbers.[8] The

---

[5] Plaintiff also lists in his opposition papers that BofA inappropriately released "other banking information." (Pl.'s BofA Opp. at 7-8.) The Court assumes that plaintiff is referring to the information that was alleged in the complaint but not listed in his opposition, namely: his social security number, driver's license and name. There is no indication that plaintiff is otherwise alleging additional information that was not already listed in the complaint or his opposition.

[6] Though plaintiff argues that BofA inappropriately released his business account number, he alleges in the complaint that the business account number was given to Johnson by Pitt Boss. (Compl. ¶¶ 19-20.) That is precisely why the USSS reached out to BofA to gather information on that account. As a result, the Court concludes that BofA did not release plaintiff's business account number to the USSS because the USSS already had it.

[7] Plaintiff claims for the first time in his opposition that BofA inappropriately released the address on the business account. (Pl.'s BofA Opp. at 7-8.) A corporate account, however, is not protected under the RFPA because a corporation is not a customer as defined under the statute. *See United States v. Daccarett*, 6 F.3d 37, 51 (2d Cir. 1993) ("[T]he act is limited to individual customers and small partnerships; corporations are not protected," further noting that only a person or a specific kind of partnership may bring an RFPA claim for wrongful conduct relating to an account "maintained in the person's name"). Thus, BofA was not barred from releasing the address on plaintiff's business account, which was in the name of a Massachusetts corporation. To the extent plaintiff is asserting that the corporate account is protected by the RFPA because he is the sole "owner" of the corporation (Pl.'s BofA Opp. at 6), that argument is without merit. *See, e.g., Exchange Point LLC v. U.S. S.E.C.*, 100 F. Supp. 2d 172, 175 (S.D.N.Y. 1999) ("Exchange Point is much more similar to a wholly owned corporation with one shareholder" whose members would not be "liable for the debts of the company," determining this supported the conclusion that plaintiff was not protected by the RFPA.). In any event, even if the corporate account was protected by the RFPA, BofA was permitted to release the address on the corporate account as identifying information where the account was involved in illegal activity. *See infra* Section III.B.2. The Court does not reach defendants' argument that plaintiff is otherwise not a "customer" for purposes of the RFPA so that the information in his personal account was not protected. (USSS's Mot. at 9-11; BofA's Mot. at 12-13.) The Court grants defendants' motions to dismiss for the reasons stated herein.

[8] Plaintiff does not contend that the information provided by BofA was not "relevant to a possible violation of any statute" within the meaning of Section 3403(c), but rather argues that Section 3403(c) does not apply for other reasons (denied *infra*). In any event, as noted

business account was linked to the personal account. (Compl. ¶¶ 30 (referring to Kirby affidavit), 40 (referring to Johnson letter), 41 (indicating link between the two accounts); Beckmann Decl. Ex. B ¶ 17 (Kirby affidavit stating that accounts were associated by common telephone number), Ex. C at 1 (Johnson letter asserting link between the accounts).)[9] The RFPA permits BofA to release information from an individual's personal account where there is a clear link to another account involved in illegal activity. *See, e.g., Exchange Point LLC v. United States Sec. & Exchange Comm'n*, 100 F. Supp. 2d 172, 173, 176-77 (S.D.N.Y. 1999) (defendant's subpoena of bank records relating to plaintiff's account was reasonable and related to defendant's investigation of other entities transferring funds that "may have been wired" through plaintiff's account in connection with a scheme to defraud investors; records were intended to help defendant determine the "true identities of the persons who profited from this scheme" where the names of such people "remained hidden" due to the use of "names of fictitious shell corporations"); *In re U.S. Sec. & Exchange Comm's Private Investigation*, No. M8-85 (MBM), 1990 WL 119321, at *1-2 (S.D.N.Y. Aug. 10, 1990) ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct," refusing to quash the government's subpoena of plaintiff's personal bank records where the government was investigating London accounts in the name of a foreign corporation); *Hoffman v. Bank of America, N.A.*, No. 8:02CV1780T27TGW, 2006 WL 1360892, at *1-2, *6 (M.D. Fla. May 16, 2006) (determining that it was permissible for bank to release, without a subpoena or other authorization, identifying information including government-issued checks, photographs of plaintiff taken by security cameras, and signature cards for the accounts of David Hoffman, and David and Donna Juillerat, "which demonstrated identical signatures"; bank suspected plaintiff of using "dual identities" to engage in illegal activity when someone they knew as David Juillerat attempted to deposit checks under the name of David Hoffman).

The BofA was permitted to release plaintiff's name, social security number, driver's license number, personal account number and address on his personal account. Such information qualifies as identifying information under the exception to RFPA's procedural requirements. *See, e.g., Puerta*, 121 F.3d at 1340, 1344-45 (bank released name and passport copy to the Government where plaintiff was being investigated for fraud); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (bank appropriately released name and social security number as identifying information); *Hu v. Park Nat'l Bank*, No. 07 C 844, 2008 WL 4686159, at *2-3 (N.D. Ill. May 8, 2008) (bank appropriately released name and three money orders); *Rufra v. U.S. Bankcorp, Inc.*, No. 3:05CV-594-H, 2006 WL 2178278, at *1, *4 (W.D. Ky. July 28, 2006) (where plaintiff was suspected of bank robbery, it was appropriate for bank to reach out and inform law enforcement of plaintiff's name

---

above, it is abundantly clear from the detailed allegations in the complaint leading up to the contact with BofA on June 7, 2005 (including the Johnson letter and Kirby affidavit) that the information sought was relevant to a criminal investigation.

[9] Although the Court has considered documents referenced by plaintiff in his complaint (such as the Kirby affidavit and the Johnson letter), the Court has not considered other extrinsic documents (such as the Abbott Affidavit) provided by defendants because the Court would need to convert the motion to dismiss to a summary judgment motion to consider those documents.

and account number); *Hoffman*, 2006 WL 1360892 at *2, *6 (among other things, releasing to law enforcement a check with plaintiff's driver's license number on the back). Although these cases do not directly discuss releasing an address, the Court concludes that BofA was permitted to release the address on plaintiff's personal account to the USSS as identifying information relevant to the fraud investigation. An address is a means of identifying a person; it may be particularly helpful in identifying an individual using multiple names to conceal his identity or, as in this case, a link to a corporation. *See, e.g., Puerta*, 121 F.3d at 1345 ("Puerta's name has, throughout his activities, been no easy thing to ascertain, because of the number of names he has used. His Spanish passport, used to identify himself when he opened the account, was 'other identifying information.'").

Plaintiff is incorrect in arguing that Section 3403 only protects the bank if the bank reaches out on its own to law enforcement, rather than the other way around. (Pl.'s BofA Opp. at 8-9.) In particular, the plain meaning of the word "notifying" is consistent with a request for notification by the third party. *See Puerta*, 121 F.3d at 1343 ("Literally, the word 'notifying' means giving notice of or informing." (citing American Heritage Dictionary of the English Language 849 (2d college ed. 1985))). In other words, a bank responding to a request for notification by law enforcement of certain information in connection with a criminal investigation is still notifying, even though law enforcement made the initial contact or request. If Congress wanted to limit this exception to circumstances where a bank initiates contact with the government, it could have used the term "contact" instead of "notifying." Thus, the plain meaning of the statute provides protection to financial institutions who notify the government about suspected illegal activity, even if such notification is in response to a government request. As noted in *Puerta*, although a House report suggests otherwise, this Court (like the Ninth Circuit in *Puerta*) declines to rely upon such a report to discern Congressional intent when the plain meaning of the statutory language clearly dictates a different result. *See Puerta*, 121 F.3d at 1344 ("The legislative history suffers the usual infirmity, that it was not passed by both houses of Congress and signed into law by the President. For that reason, it is not the law . . . . There is no way for a House or Senate member outside the relevant committee to vote against legislative history, so there is not much reason for them or us to parse every sentence. In conclusion, regardless of whether the House report implies that it should matter who calls whom, the law, at 12 U.S.C. § 3403(c), does not condition the exception upon the bank's initiating the communication. The words of the statute condition the exception upon the bank's limiting what it discloses, not upon the bank's initiating the communication.") Other courts have correctly concluded that it does not matter who requests the information; the focus is on what is actually provided. *See Puerta*, 121 F.3d at 1343-44 ("We read the word "notifying" in Section 3403(c) to refer to what the bank tells the federal authorities, not who calls whom. . . . Congress uses the word 'notifying' in the subsection in the context of limiting *what* information a bank can disclose without liability, not *when* it can make the disclosure. . . . Were we to construe the word 'notifying' to mean that Section 3403(c) can protect a bank from liability only when the bank initiates the contact, we would import an unnecessary degree of arbitrariness. . . . The statute says that its prohibitions do not preclude the bank 'from notifying a Government authority' of the

permitted matters. It says nothing about who called whom, or who 'provoked' the notification." (emphasis in original)); *Hu v. Park Nat'l Bank*, No. 07 C 844, 2008 WL 4686159, at *2-3 (N.D. Ill. May 8, 2008) (Section 3403(c) applied to bank's release of money orders and plaintiff's name to U.S. Postal Inspector at the Inspector's request). *But see Anderson v. LA Junta State Bank*, 115 F.3d 756, 759 (10th Cir. 1997) ("The Bank did not suspect plaintiffs of any wrongdoing. Rather, the government initiated the contact based on suspicions arising from information obtained from sources outside of plaintiffs' bank records. We agree with the district court that had the Bank suspected plaintiffs of wrongdoing and initiated contact . . . the information disclosed would not have violated the RFPA. However, the Bank could not respond to the government's inquiry and release information to the government investigator unless the government had properly complied with the procedures set forth in the RFPA.")

Moreover, with respect to plaintiff's argument that BofA impermissibly released the account history on his personal account, account history may be crucial to revealing a fraudulent scheme involving money transfers for illegal activity and BofA was therefore permitted to release that information to the USSS. As an initial matter, the Court notes that the exemption from RFPA's procedural requirements for information on the "nature of illegal activity" has been defined broadly. *See, e.g., Sornberger v. First Midwest Bank*, 278 F. Supp. 2d 935, 942 (C.D. Ill. 2002) (bank was permitted to release information at the request of law enforcement without customer authorization or any kind of subpoena about the reason plaintiff's bank account was closed and that plaintiff was "experiencing financial difficulties at the time"; divulging this information was within the bounds of the exemption for information regarding the nature of suspected illegal activity where the information provided motive for plaintiff to commit bank robbery). Furthermore, other courts have determined that account history, which is akin to a log of account activity, can be released under the "nature of illegal activity" exemption in Section 3403(c). *See, e.g., Rufra*, 2006 WL 2178278, at *4-5 (bank properly reached out to law enforcement to provide information "regarding the date and time of [plaintiff's] personal transactions" where the "voluntarily disclosed evidence [was] relevant to an ongoing investigation" of bank robbery); *Miranda De Villalba v. Coutts & Co. (USA) Int'l.*, 250 F.3d 1351, 1352, 1354 (11th Cir. 2001) (concluding that the "mention of the $500,000 amount of the requested wire transfer did not go beyond the 'nature' of the suspected activity" where someone at a bank subsidiary alerted law enforcement officials of suspicious activity by plaintiff); *Hoffman*, 2006 WL 1360892, at *6 (concluding that the "copies of the cashed and deposited checks [and] signature cards . . . [provided by bank] disclosed the nature of the suspected illegal activity"); *Bailey v. United States Dep't of Agric.*, 59 F.3d 141, 142-43 (10th Cir. 1995) (concluding that "information contained in the bank's food stamp log relating the amount of certain cash withdrawals to contemporaneous coupon deposits could rightfully be disclosed as part of the bank's authority to reveal 'the nature of [the] suspected activity,'" and finding that the bank appropriately provided the log to defendant where the bank suspected plaintiff of committing food stamp fraud). *Cf. Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1191 (11th Cir. 1997) ("Because the complaint alleges that First Union . . . disclosed actual financial records pertaining to Lopez's account (i.e., the electronic funds transfers communications, the contents of

which were held in electronic storage)," the disclosures were not protected by Section 3404(c).) Thus, based upon the allegations in the complaint and documents incorporated by reference therein (such as the Kirby Affidavit), the Court concludes as a matter of law that BofA was permitted to release the account history of plaintiff's personal account in accordance with Section 3403(c). *See, e.g., Lewis*, 411 F.3d at 842 (affirming dismissal of RFPA on a motion to dismiss based upon the Section 3403(c) exception); *Rufra*, 2006 WL 2178278, at *4 (determining, on a motion to dismiss, that the Bank's disclosure was authorized under Section 3403(c)).

\* \* \*

In sum, viewing the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, it is clear as a matter of law that, even if plaintiff's claims were not time-barred, the information allegedly released by BofA to the USSS without a subpoena was the kind of information exempted by the RFPA from procedures that would otherwise apply to obtaining it.[10] Accordingly, the claims under the RFPA against BofA and the USSS fail as a matter of law and must be dismissed.

C. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead his claims against the defendants. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give [leave to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. As discussed in detail *supra*, it is clear from the complaint that plaintiff does not have any possibility of asserting a viable RFPA claim against the defendants. After carefully reviewing the complaint, it is abundantly clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend the complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

---

[10] The Court does not reach the defendants' arguments that the complaint is insufficiently pled. (USSS's Mot. at 16-18; BofA Mot. at 14 n. 11, 17-19.) Nor does this Court reach BofA's argument that the complaint does not allege legally cognizable damages. (BofA Mot. at 20-22.) The defendants' motions to dismiss are granted for the reasons stated *supra*.

### IV. Conclusion

For the foregoing reasons, the Court grants the defendants' motions to dismiss the complaint in the entirety. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 22, 2011
       Central Islip, NY

\* \* \*

Plaintiff Jonathan Giannone is appearing *pro se*. The attorney for the USSS is Loretta E. Lynch, United States Attorney, by Diane Leonardo Beckmann, 610 Federal Plaza, 5th Flr, Central Islip, New York, 11722. The attorney for the BofA is Constantine A. Despotakis, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 3 Gannett Drive, White Plains, N.Y. 10604.